**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CONNIE L. PALFREY,                    )
            Plaintiff,          )
                              )
     v.                              )          Civil Action No. 06-01372
                              )          Judge Nora Barry Fischer
JEFFERSON-MORGAN SCHOOL,               )
DISTRICT; CHARLES REMBOLD,             )
individually and in his capacity as    )
Superintendent of the Jefferson-Morgan )
School District, CHARLES BARNO,        )
individually and in his capacity as Member )
of the School Board of Directors of the )
Jefferson-Morgan School District;      )
GREGORY A. NIVERTH, individually and )
in his capacity as Member of the School )
Board of Directors of the Jefferson-Morgan )
School District; ROBERT L. GREENLEE,   )
individually and in his capacity as Member )
of the School Board of Directors of the )
Jefferson-Morgan School District; ELLEN )
HILDEBRAND, individually and in her    )
capacity as Member of the School Board of )
Directors of the Jefferson-Morgan School )
District; FRANK BURICH, individually and)
his capacity as Member of the School   )
Board of Directors of the Jefferson-Morgan )
School District; DONNA BROWN,          )
individually and in her capacity as Member )
of the School Board of Directors of the )
Jefferson-Morgan School District,      )
            Defendants.         )

## MEMORANDUM OPINION

## I.     INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment. (Docket No.

20). In this employment discrimination action Plaintiff, Connie L. Palfrey ("Palfrey" or "Plaintiff"),

alleges that her contract as a technology administrator with Defendant Jefferson-Morgan School District was not renewed because she testified before the Pennsylvania Ethics Commission during an investigation of the District's Superintendent, Dr. Rembold, for certain ethical violations. Plaintiff has filed the following five claims: (1) First Amendment retaliation under 28 U.S.C. § 1983; (2) violations of the Pennsylvania Whistleblower Law, 43 P.S. § 1423; (3) violations of the Pennsylvania Public Official and Employee Ethics Act, 65 PA C.S.A. § 1108; (4) breach of contract; and (5) wrongful discharge. These claims have been brought against the Defendant School District and the Defendant School Board Members individually and in their official capacities as School Board Members. These members include Charles Barno, Gregory A. Niverth, Robert L. Greenlee, Ellen Hildebrand, Frank Burich, and Donna Brown (collectively "Defendant Board Members"). Based on the following, Defendants' Motion for Summary Judgment [20] is GRANTED.

## II. FACTUAL BACKGROUND[1]

_____

[1]

The following facts were compiled from the parties' submissions pursuant to Local Rule 56.1 including the Defendants' Concise Statement of Material Facts (Docket No. 22), Plaintiff's Response thereto (Docket No. 28), Plaintiff's Counter Statement of Material Facts (Docket No. 29) and Defendants' Response thereto (Docket No. 32). *See* W. D. Pa. L. R. 56.1. Local Rule 56.1(B)(1) requires the moving party to set forth the "facts *essential* for the court to decide the motion for summary judgment, which the moving party contends are *undisputed and material*, including any facts which for purposes of the summary judgment motion only are assumed to be true" in consecutively numbered paragraphs with accurate citations to the record. W. D. Pa. L. R. 56.1(B)(1) (emphasis added). The non-moving party is then required to admit or deny each of the moving party's facts, with citations to the record and is further permitted to set forth "any other *material facts* that are allegedly at issue, and/or that the opposing party asserts are *necessary* for the court to determine the motion for summary judgment." W. D. Pa. L. R. 56.1(C)(1)(c) (emphasis added). The moving party is then required to respond to the non-moving party's facts, again supported with citations to the record. To the extent that either party fails to respond to a statement of fact or denies a fact and does not include citations to the record, Local Rule 56.1(E) provides that such facts will be deemed admitted against the opposing party.

In this Court's estimation, Plaintiff protests too much, as indicated by her submission of three-hundred plus paragraphs in her counter statement of facts, the majority of which are not

## A. *Plaintiff's Employment History at Jefferson-Morgan*

Plaintiff was first employed by Defendant Jefferson-Morgan ("Jefferson-Morgan" or "Defendant School District") as a full-time secondary math teacher and supplemental computer coordinator between 1987 and 1989. (Docket No. 22 at ¶¶ 1 - 3; Docket No. 28 at ¶¶ 1 - 3). In 1989, Plaintiff resigned from her position with Jefferson-Morgan when her husband was transferred to West Virginia. (Docket No. 22 at ¶ 4; Docket No. 28 at ¶ 4). However, in 1997, Plaintiff returned to Jefferson-Morgan and resumed her position as a secondary math teacher and supplemental computer coordinator with the school district. (Docket No. 22 at ¶ 5; Docket No. 28 at ¶ 5). During the time period while the Plaintiff was not employed with the school, Jefferson-Morgan changed the description of the computer coordinator position to an administrative, non-bargaining unit full time position, titled "Technology Administrator." (Docket No. 22 at ¶ 6; Docket No. 28 at ¶ 6).

In April of 1999, Jefferson-Morgan entered into a three-year employment agreement with Plaintiff, which was subsequently amended on September 20, 1999. (Docket No. 22 at ¶ 7; Docket No. 28 at ¶ 7). Thereafter, on August 4, 2002, Plaintiff's first contract as a Technology Administrator expired. (Docket No. 22 at ¶ 8; Docket No. 28 at ¶ 8). The following day, Plaintiff's second three-year contract as Technology Administrator became effective. (Docket No. 22 at ¶ 9; Docket No. 28 at ¶ 9). Plaintiff was one of three district employees who had a separate employment contract. (Docket No. 22 at ¶ 10; Docket No. 28 at ¶ 10).

The terms of the contract provided that "[s]ubject to the terms and conditions of this agreement, [Jefferson-Morgan School] District does hereby employ [Plaintiff] in the capacity of the

---

material or necessary to the Court's decision in this matter. To the extent that a fact is not material or necessary, it is not considered here.

District's Technology Administrator for a term of three (3) years beginning August 5, 2002 and ending August 4, 2005." (Docket No. 23-2 at 48-49). Pursuant to the contract, Plaintiff's duties as Technology Administrator included "implementation of the District's technology plan, the installation and maintenance of the District's computer systems" as well as "[a]naly[ing] and monitor[ing] on a daily basis the proper functioning of the District's computer systems" and "tak[ing] corrective action, as necessary, by performing certain tasks or by making recommendations to the Superintendent for a change in the operation of said systems," any duties set forth in the job description of the Technology Administrator, *see* docket no. 31-2 at 35-36, and any "other duties as required by the Superintendent." (Docket No. 23-2 at 49-50).

The terms of the contract also set forth provisions that required the Superintendent to conduct an annual assessment to evaluate Plaintiff's performance, discuss and establish goals for the upcoming school year and alter the duties of the Technology Administrator, if necessary. (Docket No. 23-2 at 50). The contract could be amended or terminated by mutual written agreement of the parties after sixty days written notice to the other party, or Plaintiff could be terminated for any reason set forth in the Pennsylvania Public School Code of 1949 (the "Code"), 24 P.S. § 1-101, *et seq.*[2] (Docket No. 23-2 at 52). Lastly, subsection 6(k) of the contract provided that "[i]f the District does not renew this agreement at the end of the term, [Plaintiff] shall have the opportunity to 'bump back' into a professional position." (Docket No. 23-2 at 52).

**B.**     ***Defendant Rembold's Employment History at Jefferson-Morgan and the***

---

[2]

While the terms of the contract are broad and would permit termination for any reason set forth in the Code, the Court notes that under section 5-514 of the Code, the School Board has the power to terminate an employee for "incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct." 24 P.S. § 5-514.

*Pennsylvania Ethics Commission Investigation of His Conduct*

On September 21, 2001, Defendant Rembold became the Superintendent of the Jefferson-Morgan School District.  (Docket No. 22 at ¶ 13; Docket No. 28 at  ¶ 13).  When he was hired, Defendant Rembold informed the Jefferson-Morgan School Board that he was under investigation by the Pennsylvania Ethics Commission concerning a matter related to his prior employment as Superintendent of the West Greene School District.  (Docket No. 22 at ¶¶ 14-15; Docket No. 28 at ¶¶ 14-15).  The Ethics Commission investigation of Defendant Rembold was publicized in the newspaper and was common knowledge in the community.  (Docket No. 22 at ¶ 16-17; Docket No. 28 at  ¶¶ 16-17). In fact, Defendant Rembold openly discussed the investigation with others in the district.  *Id*.

The Pennsylvania Ethics Commission notified Defendant Rembold on March 2, 2005 that he was under investigation for activities with the Greene County Industrial Development Authority.  (Docket No. 22 at ¶ 29; Docket No. 28 at  ¶ 29).  During the investigation, the Ethics Commission interviewed various employees from Jefferson-Morgan as well as members of the school board.  (Docket No. 22 at ¶ 30; Docket No. 28 at  ¶ 30).

On March 21, 2005, the Jefferson-Morgan School Board accepted Rembold's retirement, effective as of August 21, 2005.  (Docket No. 22 at ¶¶ 18-19; Docket No. 28 at  ¶¶ 18-19).  Defendant Rembold's schedule was later reduced due to personal health reasons from April 1 to June 5, 2005.  (Docket No. 22 at ¶¶ 26-27; Docket No. 28 at ¶¶ 26-27). Between June 5, 2005 until his retirement in August, Defendant Rembold only went to Jefferson-Morgan once for one-half day to clean out his office.  (Docket No. 22 at ¶ 28; Docket No. 28 at  ¶ 28).

C.     *Plaintiff's Contact With and Testimony Before the Ethics Commission*

Plaintiff first had contact with the Ethics Commission in March of 2005 after she learned that one of her colleagues, Cody Haiden, had been asked by the Ethics Commission to provide information. After a discussion with Haiden, Defendant alleges that Plaintiff contacted the Ethics Commission and offered to deliver a computer hard drive for the investigation. (Docket No. 22 at ¶ 31). Plaintiff, however, contends that she did not offer the hard drive, but rather, that she was told to do so. (Docket No. 28 at ¶ 31). Then, sometime at the end of May of 2005, Plaintiff testified before the Ethics Commission regarding Defendant Rembold. (Docket No. 22 at ¶ 32; Docket No. 28 at ¶ 32). The record does not indicate a specific date of such testimony, but Plaintiff stated at her deposition that it was at the end of May. (Docket No. 30-2, *Palfrey Deposition* at 48). The content of Plaintiff's testimony was not divulged by the Ethics Commission and, at her deposition, Plaintiff stated that her subordinates, Adam Swinchock and Cody Kuhns, knew that she had testified, but that they would not have known the content of her testimony. *Id*.

### D. *Allegations by Defendant Rembold at the May 2005 School Board Meeting*

Defendant Rembold appeared at the May 2005 School Board Meeting and informed the School Board that a document was taken from his office. (Docket No. 22 at ¶ 20; Docket No. 28 at ¶ 20). School Board Member Pochron testified that Defendant Rembold told the School Board that his office had been broken into, records were missing, documents were sent to the Ethics Commission and later added that Plaintiff was the only other person to have access to his office. (Docket No. 28 at ¶ 20). School Board Member Starostanko had the impression that, based on his comments, Defendant Rembold was accusing Plaintiff of taking the documents and forwarding them to the Ethics Commission. (Docket No. 29 at ¶ 60; Docket No. 32 at ¶ 60). Defendant Rembold, however, testified that he believed it was maintenance employee Bob Willis ("Willis") who had

broken into his office. (Docket No. 22 at ¶ 22; Docket No. 28 at ¶ 22). Plaintiff believes that Defendant Rembold accused her of breaking into his office because Willis and Pochron both testified that Defendant Rembold accused Plaintiff of breaking into his office. (Docket No. 22 at ¶¶ 20-21; Docket No. 28 at ¶¶ 20-21). Pochron also testified that Defendant Rembold's comments at the May 2005 meeting were the first time that he had indicated that he was not satisfied with Plaintiff's performance or did not want to renew her contract. (Docket No. 29 at ¶ 67). Defendants, however, dispute that Defendant Rembold did not want to renew Plaintiff's contract, as he testified that he felt that her contract should be renewed. (Docket No. 32 at ¶ 67).

**E.** ***June 2005 Contact Between Plaintiff and Defendants and the Executive Session/School Board Meeting***

On June 2, 2005, Plaintiff received a form letter from the Defendant School District stamped with Defendant Rembold's signature. (Docket No. 22 at ¶ 45; Docket No. 28 at ¶ 45). That letter stated the following: "Please be advised that your contract with Jefferson-Morgan School District is being amended and will be available for your review/approval upon completion. If you have any questions, please contact my office at extension 212." (Docket No. 31-3 at 34). Secretary Linda King testified that she typed the letter pursuant to Defendant Barno's direction. (Docket No. 29 at ¶ 71; Docket No. 32 at ¶ 71). King further testified that immediately after the letter was typed, Barno told her to get the letter to Plaintiff quickly so that she would not worry as the School Board just needed time to review her contract. (Docket No. 29 at ¶¶ 72-73; Docket No. 32 at ¶¶ 72-73).

Plaintiff also asked Defendant Rembold about her contract and was assured that the contract would be renewed. (Docket No. 29 at ¶ 74; Docket No. 32 at ¶ 74). During the second week of June, Defendant Barno and Plaintiff discussed her contract and Plaintiff testified that Barno told her that there were some compensation issues to be worked out and that the School Board planned to

renew her contract. (Docket No. 29 at ¶¶ 75-76; Docket No. 32 at ¶¶ 75-76).

Thereafter, on June 22, 2005, the Jefferson-Morgan school board held an executive session during a routine board meeting. (Docket No. 22 at ¶ 34; Docket No. 28 at ¶ 34). Defendant Rembold could not attend because he was in the hospital. (Docket No. 22 at ¶ 35; Docket No. 28 at ¶ 35). During this session, the School Board voted against renewing the Plaintiff's contract. (Docket No. 22 at ¶¶ 36-37; Docket No. 28 at ¶¶ 36-37). The executive session was the first time that the School Board had discussed Plaintiff's performance or whether her contract would be renewed. (Docket No. 29 at ¶¶ 80-81; Docket No. 32 at ¶¶ 80-81). At the meeting, Defendant Greenlee polled the Board Members and either four or five members were not in favor of renewing Plaintiff's contract, identifying Defendants Barno, Burich, Hildebrand and Niverth. (Docket No. 29 at ¶¶ 84-86; Docket No. 32 at ¶¶ 84-86).

Defendant Barno testified that he was not in favor of retaining Plaintiff and that only two members voted in her favor. (Docket No. 29 at ¶¶ 87, 89; Docket No. 32 at ¶¶ 87, 89). Defendant Burich voted against retaining Plaintiff. (Docket No. 29 at ¶ 90; Docket No. 32 at ¶ 90). Board Members Starostanko and Pochron were in favor of retaining Plaintiff. (Docket No. 29 at ¶ 96; Docket No. 32 at ¶ 96). Pochron questioned the Board Members as to why the contract was not renewed and was not provided an answer by the Board Members. (Docket No. 29 at ¶¶ 107-108; Docket No. 32 at ¶¶ 107-108). Starostanko did not attend the June board meeting and was not aware that Plaintiff's contract was discussed at the meeting until he attended the July board meeting. (Docket No. 29 at ¶¶ 97, 98; Docket No. 32 at ¶¶ 97, 98). At their depositions, Defendants Burich, Brown, Greenlee, and Hildebrand and Board Member Pochron could not explain the apparent change between the June 2 letter and the decision to not renew Plaintiff's contract on June 22.

(Docket No. 29 at ¶¶ 110-114; Docket No. 32 at ¶¶ 110-114).   After the executive session, the Board directed the Solicitor to inform Plaintiff that her contract was not being renewed.   (Docket No. 29 at ¶ 104; Docket No. 32 at ¶ 104).

**F.      *Defendants' Knowledge of Plaintiff's Testimony***

Defendants maintain that as of June 22, 2005, Defendant Rembold and the Jefferson-Morgan Board Members were unaware that Plaintiff had testified before the Ethics Commission. (Docket No. 22 at ¶¶ 33, 38).   Plaintiff disputes the inference that Defendant Rembold and the Defendant Board Members were not aware of any of Plaintiff's contacts with the Ethics Commission because Defendant Rembold had accused Plaintiff of breaking into his office and forwarding documents to the Ethics Commission, as testified by maintenance employee, Bob Willis, and School Board Member, Mark Pochron.  (Docket No. 28 at ¶ 33, 38).

Plaintiff also testified that Cody Kuhns told her that he and Adam Swinchock had talked to Defendant Burich about her involvement with the Ethics Commission.   (Docket No. 28 at ¶ 39; Docket No. 29 at ¶¶ 53-54).  While Plaintiff admitted that she has no proof that this information was forwarded to the remainder of the Board Members, she "surmised" that Defendant Burich would have told this to the Board.   (Docket No. 22 at ¶¶ 40-41; Docket No. 28 at ¶¶ 40-41).   Both Swinchock and Burich deny discussing Plaintiff's involvement with the Ethics Commission. (Docket No. 22 at ¶¶ 42-43; Docket No. 28 at ¶¶ 42-43).   Defendant Burich further denies that he relayed this information to the remainder of the Board.  (Docket No. 22 at ¶ 44; Docket No. 28 at ¶ 44).

After his office was broken into, Defendant Rembold asked Willis to change the locks on his office doors.   (Docket No. 29 at ¶ 57; Docket No. 32 at ¶ 57).   Willis testified that these

comments made by Defendant Rembold to him led him to believe that he was accusing Plaintiff of breaking into his office, stealing documents and forwarding them to the Ethics Commission. (Docket No. 31-3, *Deposition of Robert Willis* at 17-27). Defendant Rembold denies that he made such an allegation. (Docket No. 29 at ¶ 57; Docket No. 32 at ¶ 57). Defendant Rembold also had a private conversation with Defendant Hildebrand in which he told her that his office was broken into and that things were missing. (Docket No. 29 at ¶ 62; Docket No. 32 at ¶ 62).

### G. *Plaintiff is Notified of the Non-Renewal of Her Employment Contract*

In a letter dated June 27, 2005, the School Board informed Plaintiff that her contract was not being renewed. (Docket No. 22 at ¶ 46; Docket No. 28 at ¶ 46). Thereafter, Plaintiff testified that she attempted to get an explanation as to why her contract was not renewed. Plaintiff testified that after receiving the letter, she asked School District Solicitor DeHaas and Defendant Greenlee for a reason why her contract was not renewed and both told her that they could not give her a reason. (Docket No. 29 at ¶¶ 251-254; Docket No. 32 at ¶¶ 251-254). She also asked Starostanko, who told her that he was not able to get a reason from the Board as well. (Docket No. 29 at ¶¶ 256-257; Docket No. 32 at ¶¶ 256-257). In an affidavit submitted by Plaintiff dated November 19, 2007, Plaintiff states that she asked Pochron for a reason why her contract was not renewed and that he told her that he did not know but that the whole Board was aware of her involvement with the Ethics Commission. (Docket No. 29 at ¶¶ 258-259; Docket No. 32 at ¶¶ 258-259).

### H. *July 2005 Executive Session and School Board Meeting and Defendants' Reasons for Non-Renewal of Plaintiff's Employment Contract*

At the July 2005 executive session, the Board was not polled regarding Plaintiff's contract. (Docket No. 29 at ¶ 120; Docket No. 32 at ¶ 120). Subsequently, at the immediately following July 2005 school board meeting, the School Board voted to advertise the Technology Administrator

position, effectively terminating her. (Docket No. 22 at ¶ 47; Docket No. 28 at ¶ 47); (Docket No. 29 at ¶ 119; Docket No. 32 at ¶ 119). Plaintiff questioned the Board Members at the public meeting as to why her contract was not renewed and she was not given an explanation. (Docket No. 29 at ¶¶ 260-261; Docket No. 32 at ¶¶ 260-261).

In its Answers to Interrogatories, the Defendant School District gave the following reasons for not renewing Plaintiff's contract: "(a.) inaccurate budgetary reports and/or requests; (b.) poor performance; (c.) poor attitude; and (d.) failure to address staff concerns in a timely fashion." (Docket No. 29 at ¶ 122; Docket No. 32 at ¶ 122). Defendant School District further answered that each Board Member acted as an individual Board Member on a Board which consisted of nine members. (Docket No. 29 at ¶ 128; Docket No. 32 at ¶ 128). As of August 4, 2005, the following were members of Defendant School Board: Charles Barno, Donna Brown, Frank Burich, Robert Greenlee, Ellen Hildebrand, and Gregory Niverth and Board Members, Mark Pochron, Mark Starostanko and Mark Grimes, who are not defendants in this matter. (Docket No. 29 at ¶ 6; Docket No. 32 at ¶ 6). Eight of the nine Board Members were present at the June 2005 Board Meeting at which time the decision was made to not renew Plaintiff's contract. (Docket No. 29 at ¶ 129; Docket No. 32 at ¶ 129).

Each Board Member that voted against renewing Plaintiff's contract answered interrogatories and/or testified as to their reasons. Defendant Barno cited problems with the District's website, Plaintiff's disinterest in working with the technology committee and suggestions by Plaintiff that the District purchase a T3 line and $60,000 worth of computers. (Docket No. 29 at ¶ 130; Docket No. 32 at ¶ 130). Defendant Brown testified that she did not want to renew the contract because of a rumor that Plaintiff was having an affair with a School District employee and complaints that

things were not getting done. (Docket No. 29 at ¶ 150; Docket No. 32 at ¶ 150). Defendant Burich testified that he was against renewing Plaintiff's contract because she was spending too much money and he had heard complaints from teachers about computers not getting fixed as well as problems with Plaintiff's attitude. (Docket No. 29 at ¶¶ 154, 157; Docket No. 32 at ¶¶ 154, 157). Defendant Greenlee asserted the following reasons for his decision against renewing Plaintiff's contract: "(1) personalty conflicts with board members; (2) unprofessional in regard to demeanor; (3) teacher complaints;" and (4) that Defendant Barno had told him that Plaintiff's budget reporting was not accurate. (Docket No. 29 at ¶¶ 174, 176, 180-181; Docket No. 32 at ¶¶ 174, 176, 180-181).

Defendant Hildebrand offered the following reasons for her decision to not renew Plaintiff's contract in her Answers to Interrogatories: "(a) complaints about lab equipment not working and taking forever to get fixed; (b) complaints about new equipment getting installed in a timely manner; (c) lack of confidence in her computer knowledge and recommendations; (d) poor network availability; and (e) general overall poor performance." (Docket No. 29 at ¶¶ 188-189; Docket No. 32 at ¶¶ 188-189). Defendant Niverth was also not in favor of retaining Plaintiff and testified that his reasons for such decision were his receipt of three complaints from teachers regarding broken computer equipment, his doubt that some of the computer funds requested by Plaintiff were necessary, work orders taking a long time to be completed and labs being unusable. (Docket No. 29 at ¶¶ 210-211; Docket No. 32 at ¶¶ 210-211).

Board Member Mark Pochron was against the decision to not renew Plaintiff's contract and disagreed with the reasons given by his fellow Board Members for their decisions as unwarranted criticisms. (Docket No. 29 at ¶¶ 224-235; Docket No. 32 at ¶¶ 224-235). Board Member Starostanko also opposed the decision to not renew Plaintiff's contract. (Docket No. 29 at ¶ 239;

Docket No. 32 at ¶ 239). He testified regarding the School District's reasons for not renewing Plaintiff's contract, stating that no Board Member had ever told him of the following: problems with Plaintiff's performance or attitude; problems with Plaintiff's competence; or relayed to him any complaints from third parties about Plaintiff's performance. (Docket No. 29 at ¶¶ 242, 244-246; Docket No. 32 at ¶ 242, 244-246). Starostanko also offered that he questioned the Board Members regarding why Plaintiff's contract was not renewed and in response the Board stated generally that everything that she had done was wrong, citing only the website as an example. (Docket No. 29 at ¶¶ 240-241; Docket No. 32 at ¶¶ 240-241).

I.    *The Expiration of Plaintiff's Employment Contract*

On August 4, 2005, Plaintiff's contract with Jefferson-Morgan expired and she was not offered a bargaining unit position with the Defendant School District. (Docket No. 22 at ¶¶ 48-49). The parties have differing interpretations of the bump back provision at subsection 6(k). That section provides that Plaintiff "shall have the opportunity to bump back into a professional employee position if her employment agreement is not renewed at the end of the term." (Docket No. 29 at ¶ 262; Docket No. 32 at ¶ 262). Defendants maintain that Plaintiff was not offered another position within the District because she was not qualified and/or certified for any positions that were open within the District and that there were no positions held by someone with less seniority than Plaintiff. (Docket No. 22 at ¶ 49). Plaintiff meanwhile testified that she interprets the bump back provision as obligating the School District to return her to a bargaining unit position in the event that her contract was not renewed. (Docket No. 29 at ¶ 268; Docket No. 32 at ¶ 268). Her interpretation is that the provision was a promise by the School District to place her in a position as a result of any of the following: her bumping someone out of a job if she had more seniority, filling an open

13

position, or if the School District created a position for her. (Docket No. 29 at ¶¶ 269-270; Docket No. 32 at ¶¶ 269-270). Plaintiff was ultimately replaced as Technology Administrator by her former subordinate, Adam Swinchok. (Docket No. 29 at ¶ 286; Docket No. 32 at ¶ 286).

### J.    *Defendant Rembold Convicted of Ethics Violations*

Finally, in an October 2006 decision, the Pennsylvania Ethics Commission determined that Defendant Rembold had violated the Ethics Act. (Docket No. 29 at ¶ 45; Docket No. 32 at ¶ 45). The matter was settled with Defendant Rembold agreeing to pay the Commonwealth $14,000 and that he would not hold public office or public employment. (Docket No. 29 at ¶ 45; Docket No. 32 at ¶ 45). Defendant Hildebrand testified that she had written Defendant Rembold a letter of recommendation in connection with his criminal sentencing. (Docket No. 29 at ¶ 209; Docket No. 32 at ¶ 209).

## III.    PROCEDURAL HISTORY

Plaintiff filed the instant action against Defendants Jefferson-Morgan School District and Dr. Charles Rembold on October 13, 2006. (Docket No. 1). On the same date, Plaintiff filed an Amended Complaint to include in the action Defendants Charles Barno, Gregory A. Niverth, Robert L. Greenlee, Ellen Hildebrand, Frank Burich, Donna Brown, Jefferson-Morgan School District and Dr. Charles Rembold. (Docket No. 3). On December 13, 2006, Defendants filed their Answer and Affirmative Defenses to Plaintiff's Amended Complaint. (Docket No. 6). Thereafter, the parties filed a joint motion for extension of time to complete discovery (Docket No. 17), which was granted by the Court on June 19, 2007 (Docket No. 18). Defendants filed the pending motion for summary judgment on September 28, 2007 (Docket No. 20), including a brief in support (Docket No. 21), concise statement of material facts (Docket No. 22) and corresponding appendices (Docket No. 23).

After twice receiving leave of Court for extensions of the time in which she was required to respond, Plaintiff filed her brief in opposition (Docket No. 27), response to Defendants' concise statement of material facts (Docket No. 28), Plaintiff's own concise statement of material facts (Docket No. 29) and corresponding appendices (Docket Nos. 30 and 31) on November 19, 2007. Defendants then filed their response to Plaintiff's concise statement of material facts on December 4, 2007. (Docket No. 32). As the motion is fully briefed, it is now ripe for disposition.

## IV.    STANDARD OF REVIEW

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In evaluating the evidence, the court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the

record would be insufficient to carry the nonmovant's burden of proof at trial.  *Celotex*, 477 U.S. at 322-323.  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The non-moving party "must point to actual evidence in the record on which a jury could decide an issue of fact its way." *El v. Southeastern Pennsylvania Transp. Authority (SEPTA),* 479 F.3d 232, 238 (3d. Cir. 2007) (citing *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir.2006) ("In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.")).  "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id.*

## V.    DISCUSSION

In their Motion for Summary Judgment, Defendants maintain that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law regarding each of Plaintiff's claims: (1) First Amendment retaliation pursuant to 28 U.S.C. § 1983, (2) violations of the Pennsylvania Whistleblower Law, 43 P.S. § 1423; (3) violations of the Pennsylvania Public Official and Employee Ethics Act, 65 PA C.S. § 1108; (4) breach of contract; and (5) wrongful discharge. (*See* Docket No. 21).   In response, Plaintiff withdrew her claim under the Pennsylvania Whistleblower Law but argues that summary judgment against her is not warranted as she has presented sufficient evidence to establish that genuine issues of material fact exist as to her remaining claims.  (*See* Docket No. 28).  The Court now turns to the parties' arguments in support

of and against the Defendants' Motion for Summary Judgment.

**A.**     *First Amendment Retaliation Claim*

Defendants first argue that Plaintiff's First Amendment retaliation claim must fail as Plaintiff has not adduced sufficient evidence that "the exercise of her First Amendment Rights was a substantial or motivating factor in causing a complaint of harm." (Docket No. 21 at 3). Specifically, Defendants contend that Plaintiff has produced no evidence that any of the Defendants had knowledge of Plaintiff's testimony before the Pennsylvania Ethics Commission prior to discussing the non-renewal of her contract and that Plaintiff's reliance on the temporal proximity of the testimony to the non-renewal of her contract fails as a matter of law. (Docket No. 21 at 3-4). Plaintiff, however, maintains that sufficient facts have been produced as to both the knowledge and causation elements to defeat the Defendants' summary judgment motion. (Docket No. 27 ).

The First Amendment to the United States Constitution safeguards the right to free speech. U.S. CONST. AMEND. 1. The provisions of the First Amendment bind state actors by way of incorporation through the Due Process Clause of the Fourteenth Amendment. *See Locke v. Davey*, 540 U.S. 712, 718 (2004).

To prevail on her claim of First Amendment retaliation, Plaintiff must prove the following. First, she must show that her conduct was constitutionally protected, i.e., that she was exercising rights protected by the First Amendment of the United States Constitution. *Ambrose v. Township of Robinson*, Pa.  303 F.3d 488, 493 (3d Cir. 2002) (citing *Bd. of County Comm'rs. v. Umbehr*, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996)). Second, she must show that her claimed "protected activity was a substantial or motivating factor in the alleged retaliatory action." *Id*. The burden then shifts to Defendants who "may defeat the [P]laintiff's case by showing that [they] would

have taken the same action even in the absence of the protected conduct." *Id.*; *see also Hill v. City of Scranton*, 411 F.3d 118, 127 (3d Cir. 2005).

Here, Defendants do not contest that Plaintiff's testimony before or conversations with the Ethics Commission constituted constitutionally protected speech (*see* Docket No. 21 at 6), and the Court will assume for the purposes of this opinion that the Plaintiff has made a sufficient showing that her conversations/testimony constituted protected speech under the First Amendment.[3] Defendants also do not maintain that the status of the Defendants as individuals, board members or a school district requires the Court to analyze the causation element challenged here under a different standard or that such status is grounds for dismissal from this action.

### 1. Knowledge of Protected Conduct

In their motion for summary judgment, Defendants permit the Court to assume for purposes of their motion that the Plaintiff's "conversations with the Ethics Commission (whether or not they were instituted by Palfrey [ ]) were protected speech." (Docket No. 21 at 6). Defendants maintain that Plaintiff has not met her burden to prove that the Plaintiff's protected speech was a substantial

---

[3] The Court understands that the term "conversations" used by Defendants does not request that the Court assume that any "involvement" by the Plaintiff with the Ethics Commission is also within the ambit of protected speech under the First Amendment.

The Court further notes that despite Plaintiff's status as a public employee, her testimony before the Ethics Commission would be protected under the First Amendment in light of the United States Court of Appeals for the Third Circuit's decision in *Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008). In *Reilly*, the Court of Appeals held that testimony constitutes speech "as a citizen" even where the same "speech" would otherwise constitute speech pursuant to one's official duties. The primary basis for this decision was the obligation that each *citizen* has to testify truthfully in a court of law, regardless of *why* he or she must testify. *Reilly*, 532 F.3d at 231 ("Thus, the act of offering truthful testimony is the responsibility of every citizen, and the First Amendment protection associated with fulfilling that duty of citizenship is not vitiated by one's status as a public employee. That an employee's official responsibilities provided the initial impetus to appear in court is immaterial to his/her independent obligation as a citizen to testify truthfully.").

or motivating factor in the decision to not renew her employment contract. *Id.* Specifically, Defendants argue that Plaintiff has presented no evidence that the Defendants had knowledge that Plaintiff had engaged in protected speech, i.e., that they knew that she had given testimony to (or engaged in conversations with) the Ethics Commission. *Id.* Plaintiff argues that she has presented sufficient evidence to create a genuine issue of material fact as to the Defendants' knowledge of her testimony before and "involvement" with the Ethics Commission and thus, defeat Defendants' motion for summary judgment. (Docket No. 27 at 7).

As previously stated, Plaintiff bears the burden to prove that her claimed "protected activity was a substantial or motivating factor in the alleged retaliatory action" of the Defendants in this matter. *Ambrose,* 303 F.3d at 493. Plaintiff also has the burden to prove that Defendants had knowledge of Plaintiff's claimed protected activity as the United States Court of Appeals for the Third Circuit has held that "[i]t is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Id.* (citation omitted). Plaintiff's Amended Complaint alleges a claim of First Amendment retaliation pursuant to 42 U.S.C. § 1983 against the Defendants and avers that:

> 36. Ms. Palfrey's testimony before the Ethics Commission constituted 'protected activity' under the First Amendment.

> 37. In June 2005, Defendant Rembold and the Board of School Directors became aware that Palfrey had testified before the Ethics Commission.

> 38. Ms. Palfrey's testimony before the Ethics Commission regarding Defendant Rembold was a substantial or motivating factor in the Board's decision not to renew her employment contract.

(Docket No. 3 at ¶¶ 36-38). Plaintiff is bound by these averments and in order to proceed to trial on her claim, she must present sufficient evidence at this stage that Defendants had knowledge of

her testimony before the Ethics Commission or conversations with the Ethics Commission, as conceded by Defendants in their motion. *See Baranowski v. Waters*, *et al.*, Civil Action No. 05-1379, 2008 WL 728366, at *23 (W.D.Pa. March 18, 2008)(citing *Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004)). The Court further recognizes that while the burden to prove knowledge rests with Plaintiff, that generally "when the moving party 'exclusively' controls 'the knowledge of the events or occurrences on which the action is based' an issue of credibility is presented." *Keefer v. Durkos*, Civil Action No. 3:04-187, 2006 WL 2773247, at *14 (W.D.Pa. September 25, 2006) (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2726 (3d ed.1998)).

Defendants' argument relies on the decision by the United States Court of Appeals for the Third Circuit in *Ambrose v. Township of Robinson*, to which the Court now turns. The facts of *Ambrose* are as follows. The plaintiff was a police sergeant who brought a First Amendment retaliation claim against the defendant township alleging that he was suspended as a result of his submitting an affidavit in support of a fellow officer's lawsuit against the township. *Id*. at 490. The evidence at trial established that the officer had signed the affidavit on May 13, 1999 and that the affidavit had been supplied to the township's counsel and its solicitor within a 371 page document production on June 17, 1999. *Id*. at 493-494. The township commissioners all denied knowing of the existence of the affidavit prior to voting to suspend the officer on July 12, 1999. *Id*. at 493. The Court of Appeals found that although the denials by the commissioners were not dispositive of the issue of knowledge, that the officer had the burden of proof on that issue and his claim failed because of the lack of any other evidence that the commissioners had knowledge of the affidavit. *Id*. The Court of Appeals also held that the knowledge of the township's counsel and its solicitor

could not be imputed to the ultimate decision-makers, the voting commissioners, to sustain the officer's First Amendment retaliation claim and that temporal proximity between the protected activity and the retaliatory action were not sufficient to sustain such a claim without the plaintiff first proving knowledge by the defendants of the protected activity. *Id.* at 494.

After concluding that the plaintiff had failed to demonstrate that the defendant had knowledge that plaintiff filed the affidavit at issue, the Court of Appeals addressed whether the district court erred in finding that causation was present based on the "perceived support" by the plaintiff of his fellow officer. *Id.* at 495. The evidence of record indicated that the defendants suspected that the plaintiff had entered administrative offices after hours, stole documents and then forwarded the documents to his fellow officer for use in his lawsuit against the township. *Id.* at 495-496. The plaintiff denied that he had entered the offices for this purpose and testified that he only entered to use a copier. *Id.* at 496. The Court of Appeals agreed with the district court which had held that "unauthorized entry into closed administrative offices for the purpose of copying records is not activity protected by the First Amendment" and found that because there was no evidence that the defendants had knowledge of the claimed protected speech, that the plaintiff could not maintain a First Amendment retaliation claim. *Id.*

Several district courts have analyzed the requirement set forth in *Ambrose,* that a plaintiff must present evidence of a defendant's knowledge of the plaintiff's claimed protected activity in support of a claim that such protected activity was a substantial or motivating factor in the adverse employment action taken against the plaintiff. *See Johnson v. Community College of Allegheny County, et al.*, Civil Action No. 05-0867, 2008 WL 2746714, at *48 (W.D.Pa. July 10, 2008)(granting defendants' motion for summary judgment on First Amendment retaliation claim as

plaintiff did not adduce sufficient evidence that defendants had knowledge that she was a member of the Black Caucus or that she engaged in protected activity related to her membership in such organization); *see also Uhl v. County of Allegheny, et. al*, Civil Action No. 06-01028, 2008 WL 2858412 (W.D.Pa. July 22, 2008)(granting summary judgment in favor of defendants on plaintiff's First Amendment retaliation claim on grounds that plaintiff's alleged protected activity, the filing of a complaint, was confidential in nature and that plaintiff did not present any evidence to show that defendants had knowledge of the claimed protected activity); *but see Perett v. Harmar Township*, Civil Action No. 07-563, 2008 WL 3457014 (W.D.Pa. August 8, 2008)(denying a motion for summary judgment as the district court found that plaintiff had presented enough evidence to permit a reasonable inference that defendants had knowledge of plaintiff's claimed protected activity). These district court decisions as well as the Court of Appeals decision in *Ambrose* demonstrate that it is proper for the Court to analyze the evidence presented by Plaintiff in support of her argument that Defendants had knowledge of the Plaintiff's claimed protected activity in this matter.

Another decision which presents facts analogous to those of the case at bar is *Keefer v. Durkos*, 2006 WL 2773247, at *14 (W.D.Pa. September 25, 2006). In *Keefer*, the district court granted summary judgment in favor of defendants and dismissed the plaintiff's First Amendment retaliation claim because the plaintiff did not produce evidence of knowledge by defendants of the plaintiff's alleged protected activity. *Id*. at *17. The plaintiff in *Keefer* was the secretary of the school board who alleged that she was fired for filing an ethics complaint against one of the school board members. *Id*. at *1. The district court found that while the defendants were aware that an ethics complaint had been filed against the board member and that an investigation of the board member was ongoing, that the plaintiff did not produce any evidence that the board members had

knowledge that it was the plaintiff who had initiated the ethics complaint. *Id*. at *15. In support of her contention that defendants had knowledge, the plaintiff testified that the board members had knowledge of her complaint based on the following: the board members had knowledge of the overall investigation; the board members must have known about the ethics complaint because everyone talked in the small town; and, that it was common knowledge that the plaintiff worked for an attorney who had requested the production of certain documents from the board member being investigated. *Id*. at *13. The district court rejected this argument and held that the "[p]laintiff's only manner of linking her speech to the [d]efendants' alleged knowledge of the speech is through an inference based upon speculation, and this cannot create a genuine issue of material fact." *Id*. at *17. As the plaintiff had failed to present sufficient evidence of the defendants' knowledge, the Court granted summary judgment in favor of defendants and dismissed the plaintiff's First Amendment retaliation claim. *Id*.

In light of the decision by the Court of Appeals in *Ambrose* and the district court decisions interpreting the requirement that a plaintiff present evidence of the defendants' knowledge at the summary judgment stage, the Court now turns to the evidence produced by Plaintiff in this matter to determine if the same is sufficient to create a genuine issue of material fact on the issue of Defendants' knowledge.

The facts viewed in the light most favorable to the Plaintiff and resolving all reasonable, non-speculative inferences in her favor establish the following. Plaintiff was employed as a technology administrator by the Defendant School District under a three year employment contract for a term starting August 5, 2002 and ending August 4, 2005. (Docket No. 23-2 at 48-49). Dr. Rembold, the Superintendent of Defendant School District, and also an individual defendant in this matter, was

being investigated by the Pennsylvania Ethics Commission during this time. (Docket No. 22 at ¶¶ 14-17; Docket No. 28 at ¶¶ 14-17). Plaintiff testified before the Ethics Commission in May of 2005, but the substance of her testimony is confidential and not known except that the record reflects that it may have involved the delivery of a computer hard drive from Dr. Rembold's office at Jefferson-Morgan to the Ethics Commission. (Docket No. 30-2, *Palfrey Deposition* at 48). A series of events occurred at the May 22, 2005 executive session of the School Board which are at issue and discussed in greater detail below.

Plaintiff received a letter dated June 2, 2005 from the School District, under the signature of Dr. Rembold, which stated the following: "Please be advised that your contract with Jefferson-Morgan School District is being amended and will be available for your review/approval upon completion. If you have any questions, please contact my office at extension 212." (Docket No. 31-3 at 34). The School Board then voted to not renew Plaintiff's employment contract at an executive session on June 22, 2005. (Docket No. 29 at ¶¶ 80-81; Docket No. 32 at ¶¶ 80-81). Thereafter, the Solicitor sent Plaintiff a letter dated June 27, 2005 which informed her that her contract would not be renewed. (*See* Docket No. 23-2 at 36). At the July 2005 meeting of the School Board, the members voted to advertise the Technology Administrator position to the public. (Docket No. 22 at ¶ 47; Docket No. 28 at ¶ 47). Plaintiff's employment contract was not renewed and thus expired on August 4, 2005. She was also not offered a professional employee position and as of that date she was no longer employed by the Defendant School District.

Plaintiff claims that disputed issues of material fact exist as to the issue of whether Dr. Rembold and the voting School Board Members had knowledge of her testimony before the Ethics Commission prior to the School Board making the decision to not renew her contract in June of

2005.  (*See* Docket No. 27).   Plaintiff relies on the following to establish the Defendants' knowledge: (a) Plaintiff's testimony as to Dr. Rembold's knowledge; (b) Plaintiff's testimony as to Board Member Frank Burich's knowledge; (c) statements at the May 22, 2005 executive session of the school board to the board members by Dr. Rembold; and (d) the School Board Members' knowledge as imputed by Dr. Rembold's knowledge.  The Court will discuss each, in turn.

> a. *Plaintiff's Evidence of Superintendent Dr. Rembold's Knowledge from Conversations with Plaintiff's Subordinates*

Plaintiff argues that Defendant Rembold had knowledge of Plaintiff's testimony before the Ethics Commission.  Plaintiff supports such assertion with her own testimony that relies on out-of-court statements by non-parties to this action, including Linda McCracken as well as Plaintiff's subordinates, Adam Swichock and Cody Kuhns.  Defendant Rembold denies that he knew that Plaintiff testified before the Commission.  (Docket No. 22 at ¶ 33 (citing *Rembold Deposition* at 96)).  Plaintiff offered the following testimony at her deposition.

> Q: When did you testify [before the Ethics Commission]?
>
> A: I believe it was in the end of May in 2005.  I believe.  I'm not sure of the date.
>
> Q: And is it your testimony ... you testified before the Ethics Commission, how did the board find out about that?
>
> A: Adam [Swinchock] knew.
>
> Q: And would it be the same.  Adam would have told [Linda McCracken, who would have told [Superintendent Dr.] Rembold, and Adam would have told [Board Member Frank] Burich, who would have told the rest of the board?
>
> A: Correct.
>
> Q: About your testifying?

A:     Correct.

Q:     And how did Adam know you testified?

A:     I told him.

Q:     And the Ethics Commission did tell you not to talk about your testimony before the Ethics Commission, right?

A:     Correct.  And I didn't talk about my testimony.

Q:     How do you know Adam Swinchock talked to Linda McCracken about your testimony before the Ethics Commission?

A:     Adam and Cody Kuhns, both, made it well known that all of this was discussed in the 21st Century Office with Linda McCracken.  The same as it was discussed in my office.

Q:     Did they specifically tell you that they told Linda McCracken or they had discussed in front of Linda McCracken that you had testified before the Ethics Commission?

A:     Cody Kuhns did, yes.

Q:     What did he say?

A:     He said they had talked about my testimony.

Q:     What did they know other than you testifying?

A:     They knew that my testimony was regarding the hard drive and the removal of the computer from Dr. Rembold's home, and they knew that I was aware of all the same information that I was aware of.

Q:     That wasn't my question.  My question was: How did they know what you testified to?  I think that was my question.  If it wasn't, let me ask it again.  How did they know what you testified to before the Ethics Commission.

A:     I don't think that they knew exactly what I testified to.

Q:     So they couldn't have told Linda McCracken exactly what

you testified to, and she couldn't have told Rembold exactly what you testified to, correct?

A:      No.  She couldn't have known exactly what I testified to, but she knew the information was regarding Rembold.

Q:      And how do you know that Linda McCracken told Dr. Rembold?

A:      I don't know exactly how she told Dr. Rembold.

Q:      Or if she told Dr. Rembold?

A:      I don't have proof that she told him.

(Docket No. 30-2, *Palfrey Deposition* at 48:1-51:20).  Plaintiff further testified to the following.

Q:      ... How did Dr. Rembold become aware of your involvement with the Ethics Commission?  I don't think that I've asked you that before.  If I did, I apologize.

A:      I believe he became aware of that in a couple different ways. One was through a letter that he asked me to predate, and then I'm not sure how he found out about that, but he later said that I had stolen it from his office and sent it to the Ethics Commission.  And also through conversations with Linda McCracken.  And I know that he was aware of my involvement because he told another employee that he needed the locks changed on his office because I had broken into his office.

Q:      As far as the information from Linda McCracken, you're just assuming that that occurred.  You have no proof that McCracken said anything to him; is that right?

A:      Correct.

(*Id*. at 92:6-92:25).

To summarize, Plaintiff testified that Defendant Rembold had knowledge of her testimony before the Ethics Commission as her subordinates Kuhns and Swinchock discussed the fact that Plaintiff had testified with Linda McCracken.  Plaintiff then assumes that Linda McCracken must

have told Dr. Rembold that she had testified before the Ethics Commission.  Plaintiff does not offer any testimony from Swinchock, Kuhns or McCracken to corroborate that these conversations took place or the content of the same.

In this Court's estimation, the testimony offered by Plaintiff describing the chain of conversations between non-parties cannot be used by Plaintiff to create a genuine issue of material fact to defeat Defendants' motion for summary judgment.  While Plaintiff is the non-moving party and "is entitled to have all inferences drawn in her favor, it has been recognized that inferences based upon speculation do not create genuine issues of material fact."  *Keefer*, 2006 WL 2773247, at *14 (W.D.Pa. September 25, 2006)(citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382, n. 12 (3d Cir.1990)).  The above quoted testimony of Plaintiff is also based on hearsay which would not be admissible at trial, and the Court declines to consider the same to create a genuine issue of material fact at the summary judgment stage.  *See Perrett v. Harmar Township*, Civil Action No. 07-593, 2008 WL 3457014, at *7 (W.D.Pa. August 8, 2008)(citing *J.F. Feeser Inc.*, 909 F.2d at 1542; *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 95 (3d Cir. 1999)(citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n. 1 (3d Cir. 1996)))("when a non-moving party points to arguably hearsay evidence, [the court] must first determine whether the evidence has the potential to be admissible at trial.  If it is admissible, [the court] may consider it in ruling upon a motion for summary judgment.").  Accordingly, the Court finds that the testimony of Plaintiff regarding the above described chain of conversations to demonstrate Defendant Rembold's knowledge is not sufficient evidence to create a genuine issue of material fact precluding summary judgment.

    b.  *Plaintiff's Evidence of Board Member Frank Burich's Knowledge*

Plaintiff also argues that Board Member Frank Burich had knowledge of her testimony

before the Ethics Commission and that he forwarded this information to the other board members. (Docket No. 27 at 8). Plaintiff again supports this allegation with her own deposition testimony, stating that Kuhns and Swinchock told her that they had discussed her Ethics Commission testimony with Mr. Burich. (Docket No. 29 at ¶¶ 53-54). Plaintiff testified to the following.

> Q: How do you know Adam Swinchock told Frank Burich about your testimony before the Ethics Commission?
>
> A: I know that Adam and Cody Kuhns worked together at the Vo-Tech, and I know that they would come back to my office repeatedly talking about conversations that they had with Frank Burich and I know that Cody Kuhns was very outspoken in his beliefs about Dr. Rembold, and I know that Cody Kuhns told me that he and Adam had talked to Frank Burich about my involvement with the Ethics Commission.
>
> Q: And then how do you know Burich then relayed that information to the board?
>
> A: I'm surmising.
>
> Q: So you don't have any proof that he did that?
>
> A: No.
>
> Q: And, in fact, you [sic] present when Mr. Burich denied doing anything like that, weren't you?
>
> A: Yes, I was.
>
> Q: Was he lying?
>
> A: I believe --

(Docket No. 30-2, *Palfrey Deposition* 50:23-51:20; *see also* Docket No. 30-2, *Palfrey Deposition* at 107:3-108:24). Again, Plaintiff has not offered the testimony of Kuhns or Swinchock to support these statements. Further, in their deposition testimony, both Swinchock and Defendant Burich

denied that a conversation between the two about Plaintiff's Ethics Commission testimony occurred. (Docket No. 23-2, *Swinchock Deposition* at 32; Docket No. 23-2, *Burich Deposition* at 56-58). Even if the Court were to accept Plaintiff's version, that the conversation between Burich, Kuhns and Swinchock took place and that they discussed her Ethics Commission testimony, a reasonable jury would have to infer from Plaintiff's "surmising" that Burich forwarded this information to the rest of the Board. The Court again finds that such an inference is speculative and will not consider the same to create a genuine issue of material fact at the summary judgment stage. *See Keefer*, 2006 WL 2773247, at *14 (holding that "inferences based upon speculation do not create genuine issues of material fact.").

        c.      *Plaintiff's Evidence of the Knowledge of Defendant Rembold and the Defendant Board Members from Events at the May 22, 2005 Executive Session of the Board*

Plaintiff also argues that the Defendants had knowledge of Plaintiff's "involvement" with the Ethics Commission based on statements made by Defendant Rembold at the May 22, 2005 board meeting. (Docket No. 27 at 8). Specifically, Plaintiff contends that allegations made by Dr. Rembold that someone had broken into his office, stolen documents and forwarded those documents to the Ethics Commission and insinuated that Plaintiff was the only one that had access to his office demonstrate Defendants' knowledge. *Id*. Plaintiff supports this argument with her own testimony and affidavit, the testimony of non-parties and Board Members Mark Pochron and Mark Starostanko (who both voted to renew Plaintiff's contract) as well as school district maintenance employee Bob Willis. *Id*. at 8-9.

Plaintiff testified to the following at her deposition regarding the School Board's knowledge of her Ethics Commission testimony.

> Q:    What proof do you have that Dr. Rembold told the board?
>
> A:    The board member [sic] testified.
>
> Q:    And who was that?
>
> A:    Mark Pochron and Mark [Starostanko], and Rembold said he had told the board.
>
> Q:    This was in June of 2005?
>
> A:    He said he had discussed the Ethics Commission testimony with the board.

(Docket No. 30-2, *Palfrey Deposition* at 50:12-20). Plaintiff later echoed the same sentiments.

> Q:    ... What's your basis for that allegation? Why do you believe that?
>
> A:    I believe that the board retaliated against me because of my involvement with the Ethics Commission.
>
> Q:    We talked a little while ago about proof. Do you have anything that you would deem to be proof of this allegation?
>
> A:    I know that as of June 2nd and mid June, my contract was being renewed, and then within two weeks, it was not being renewed. And the only thing that changed was that they became aware of my involvement with the Ethics Commission.
>
> Q:    And, again, your testimony is that you have no proof that they knew; is that right?
>
> A:    Well, because of their testimony, no, I don't have proof.

(Docket No. 30-2, *Palfrey Deposition* at 54:2-19).

Plaintiff's statements at her deposition that Board Members Pochron and Starostanko testified that Dr. Rembold told the school board of her Ethics Commission testimony relies on the testimony of other persons, and the Court need not consider a non-movants' "own subjective

interpretation of events" to establish a genuine dispute of a material fact on a motion for summary judgment. *Keefer,* 2006 WL 2773247, at *14 (citing *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 908-909 (3d Cir.1984)). Accordingly, the Court now turns to the actual testimony of the individual board members regarding the actions of Dr. Rembold at the May 22, 2005 executive session.

It is argued by Plaintiff that at that session, Superintendent Dr. Rembold appeared and made comments to the Board that were interpreted by Board Members Pochron and Starostanko that Dr. Rembold was accusing Plaintiff as the person that broke into his office, stole documents and forwarded them to the Ethics Commission. (Docket No. 27 at 9). Regarding the events at that meeting, Board Member Pochron testified to the following.

> Q:    Now, what do you recall being discussed at the May executive session?
>
> A:    Probably what stands out most in my mind is [Dr.] Rembold coming in and stating that his office had been broken into, that records were missing, that documents had been faxed to the Ethics Commission, and subsequently that Mrs. Palfrey was the only other person to have access to his office.
>
> Q:    Did he make all of those facts known at the same meeting?
>
> A:    Yes.
>
>        ...
>
> Q:    Did you take Dr. Rembold's statements as him accusing Connie Palfrey of breaking into his office?
>
> A:    I took it two ways. I took it, in effect, that he was criticizing Palfrey to the board, and I took it -- Mrs. Hildebrand was there, also, because I remember her looking at me as he made these statements.
>
>        I took it also that it would give him an excuse to the Ethics

Commission or any other investigations that were going on that, "I'm sorry, I can't provide that document to you. It's disappeared from my office." So I took it, in effect, in two different ways.

Q:     When you say that you took it the first way as Dr. Rembold criticizing Connie Palfrey, what do you mean by that?

A:     Well, it was really an off-the-cuff remark. Like I say, he didn't just come out and directly say, "Connie Palfrey" broke into my office." But just the way he said it, the insinuation that "she's the only other person that has access to my office."

(Docket No. 30-6, *Pochron Deposition* at 26:11-27:21).

Board Member Starostanko also offered the following testimony regarding the same events.

Q:     ... Do you recall there being discussion at any executive session by Dr. Rembold about his office being broken into?

A:     Yes, I do. And I believe it was prior to him also rescinding his position or turning in his notice.

                         ...

Q:     ... Can you tell me what you recall he said?

A:     Something to the effect that his office was broken into, things were missing, things were construed the way he would have not had them prior. Other than that, I do not recall any further information about that.

                         ...

Q:     Did you come away with the sense of surprise that he would provide that information in the executive session?

A:     Yes.

Q:     And why is that?

A:     Without knowing the full of [sic] breast of knowledge of what accusations might -- you know, what he was trying to get at

33

by saying that Connie would have had access to his office. ...

...

Q:    ... And do you know why he made that known to the board?

A:    Did he personally tell me anything?

Q:    Yeah.  Did he say why he was making it known?

A:    No.  But being the situation that he's currently in, or was in at that point with the Ethics Commission, it could have been relating to that.

Q:    Did you have the impression that he was trying to cover himself if he was asked to produce documents that he couldn't produce?

A:    One could only assume that, but yes.

Q:    At the time did you come away with some impression that he was trying to cover himself in one way or another?

A:    Yes.

Q:    Did you come away with the impression that he was blaming Connie Palfrey or indicating Connie Palfrey was the person who broke into his office?

A:    Could you repeat that again.

Q:    Did you come away with the impression that he was indicating that Connie Palfrey was the one who broke into his office?

A:    One could assume that with his statements toward the board, yes.

(Docket No. 30-6, *Starostanko Deposition* at 8:1 - 12:24).

In sum, both Pochron and Starostanko testified that they interpreted Defendant Rembold's statements in a manner that both believed that he was accusing Plaintiff of breaking into his office,

and that she stole documents and forwarded them to the Ethics Commission. Defendant Rembold is a defendant in the instant action. Therefore, his statements at the executive session may be admissible as admissions of a party opponent which do not constitute hearsay. *See* Federal Rule of Evidence 801(d)(2) ("A statement is not hearsay if -- [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity"); *Perrett,* 2008 WL 3457014, at *6-7 (discussing agency admissions as non-hearsay and the use of same on a motion for summary judgment).

Likewise, Pochron and Starostanko's interpretation of these statements may also be admissible. Drawing all reasonable inferences in the favor of Plaintiff, *see Watson*, 478 F.3d at 147, the testimony of Pochron and Starostanko shows that Defendant Rembold made allegations that someone broke into his office, stole documents and forwarded the documents to the Ethics Commission. It also shows that he implicated Plaintiff as the person responsible for such conduct.

Plaintiff also relies on the above statements by Defendant Rembold to the board as well as the testimony of a maintenance employee, Bob Willis and Board Member Hildebrand to demonstrate the knowledge of Defendant Rembold. (Docket No. 27 at 8-9). Willis testified that comments made to him by Defendant Rembold requesting that the locks on his office be changed because documents were stolen from his office, led him to believe that he was accusing Plaintiff of breaking into his office. (*See* Docket No. 31-3, *Deposition of Robert Willis* at 17-27). Hildebrand testified to the following.

> A:     In executive session?
>
> Q:     Any time.
>
> A:     I know that [Defendant Rembold] had said to me that the
>        office had been breached and things were -- like, somebody

had been in the office, that wasn't sure, like, what it was.

Q:     When did he tell you that?

A:     I'm thinking it was in May.

Q:     May of 2005?

A:     Yes.

Q:     Do you recall if he said that in executive session or was it a private conversation outside of executive session with you?

A:     Mine was a private conversation.

Q:     Was it on the phone or was it in person?

A:     In this office.

Q:     Where we're sitting right now?

A:     Yes.

Q:     Who else was present?

A:     I think just [Defendant Rembold] and I.

Q:     Was it before or after -- strike that.  Was it the day of the executive session?

A:     I don't believe so.  I think it was weeks before.

Q:     Okay.  And do you know why he told you that?

A:     He was concerned that people had been through his office.

Q:     Did he indicate to you that Connie Palfrey was the person he suspected to have broken into his office?

A:     No.

Q:     Did he indicate that Connie Palfrey had a key to his office?

A:     No.  Not that I recall, no.

Q:     Did he indicate that things were missing from his office?

A:     Yeah.

Q:     Did he indicate that he believed things were missing from his office and sent to the Ethics Commission?

A:     No, I don't recall that.

(Docket No. 30-5, *Hildebrand Deposition* at 59:1-60:15).

Again, these statements of Defendant Rembold to Willis and/or Hildebrand may be admissions of a party opponent. *See Perrett*, 2008 WL 3457014, at *6-7. Once again, drawing all reasonable inferences in favor of Plaintiff, this testimony demonstrates that Defendant Rembold alleged that Plaintiff had broken into his office, stole documents and forwarded them to the Ethics Commission.

The factual scenario in this matter is analogous to that of *Ambrose* in which the plaintiff's "perceived support" of a fellow officer by his unauthorized entry into closed offices to take documents for use by the officer in a lawsuit against the township was found to not constitute protected activity under the First Amendment or as evidence of the defendant's knowledge that the plaintiff had filed an affidavit in support of that officer. *See Ambrose*, 303 F.3d at 495-6. Likewise, the Court finds that the Defendants' perception of Plaintiff's "involvement" with the Ethics Commission in this matter, i.e., she allegedly broke into an office, took documents and forwarded them to the Ethics Commission does not demonstrate that Plaintiff has engaged in any activity protected by the First Amendment. Furthermore, Plaintiff has not alleged in her Amended Complaint that she engaged in this alleged conduct or that it constituted "protected activity" under the First Amendment and Defendants have not conceded the same on their motion for summary

judgment.[4]  Again, Plaintiff alleges that her testimony before the Ethics Commission constitutes protected speech and Defendants have conceded only that her conversations with said Commission would constitute the same.  (*See* Docket No. 3 at ¶ 36; Docket No. 21 at 6).  Accordingly, the Court finds that it would require an inference based on speculation for a jury to conclude that the statements by Dr. Rembold at the May 22, 2005 executive session of the board prove that the Defendant Board Members had knowledge that Plaintiff had testified before or had conversations with the Ethics Commission.

Plaintiff also maintains in her statement of facts that "Pochron further told Palfrey that at the May 2005 executive session, Rembold was aware of Palfrey's subpoena to provide testimony to the Ethics Commission and that she was working with the Ethics Commission to discredit him" relying on a portion of her deposition testimony as support for this factual assertion.  (*See* Docket No. 29 at ¶ 69 (citing *Palfrey Deposition* at 101)).  The cited portion of Plaintiff's deposition testimony provides:

> Q:      You didn't write a memo or talk to the board about this allegation?
>
> A:      No.

---

4

Even if Plaintiff argued here that she was retaliated against based on Defendant Rembold's allegations, assuming that such an allegation occurred, her First Amendment retaliation claim would fail because she does not argue and the record does not support a finding that she actually took the document from Rembold's office and faxed the same to the Ethics Commission.  As stated above, Plaintiff also does not argue that faxing a document to the Ethics Commission would constitute protected speech.  Plaintiff must prove that she engaged in protected speech and cannot sustain her burden of proof based on mere allegations or beliefs held by Defendants.  *See Fogarty v. Boles*, 121 F.3d 886, 890 (3d Cir. 1997)(holding that "in the absence of speech, or, at the extreme, intended speech, there has been no constitutional violation cognizable under section 1983 based on an asserted 'bad motive' on the part of defendant.").  Therefore, in this matter, Plaintiff must rely on her testimony before the Ethics Commission as the basis of her First Amendment retaliation claim, conduct in which she has actually engaged.

Ms. Johnson: Which allegation, just so I'm clear?

By Mr. Smart:

Q:     I'm sorry, the allegation that you had broken into Dr. Rembold's office and stole documents that you sent to the Ethics Commission?

A:     No.

Q:     Mrs. Palfrey, the bottom of the page, bottom of page 3 and onto the top of page 4, it says, during the executive session of the board in May of 2005, Rembold told all board members in attendance that Palfrey had broken into the business office and stolen documents that she then forwarded to the Commission. He was aware of Palfrey's subpoena to provide testimony to the Commission. He also told the board Palfrey was working with the Commission to discredit him.

       I believe you said elsewhere in your answers, and you correct me if I'm wrong, but the source of the information was from Mark Pochron; is that correct?

A:     Yes.

Q:     Did anyone else tell you what was said at that executive session in May?

A:     No.

(Docket No. 30-2, *Palfrey Deposition* at 100:11-101:14).

The Court finds that the offered statement that Dr. Rembold was aware of Plaintiff's subpoena or that Plaintiff was working with the Ethics Commission to discredit him was read to Plaintiff at her deposition by Defense Counsel from a portion of Plaintiff's Answers to Interrogatories. (*See* Docket No. 23-3, *Plaintiff's Answers to Defendant's First Set of Interrogatories and Request for Production of Documents Directed to Plaintiff Connie Palfrey* at 19-20). To the extent that Plaintiff is relying on factual averments in her Answers to Interrogatories

39

as evidence to create a genuine issue of material fact, the Court does not accept the same as the averments are merely suppositions based on "the best of [her] personal knowledge, information and belief" made at the outset of her case and are not facts which can be considered by the Court at this stage. (Docket No. 23-3 at 57). *See* 10A WRIGHT, MILLER AND KANE, FEDERAL PRACTICE AND PROCEDURE 3d § 2722 (explaining that Rule 56(c) permits the use of answers to interrogatories on a motion for summary judgment, "as long as they satisfy the other requirements in Rule 56 and contain admissible material."). Further, to the extent that Plaintiff is relying on statements allegedly made by Pochron, the same is not corroborated by his testimony as detailed above. (*See* Docket No. 21 at 5 n. 2). Lastly, Plaintiff relies on an affidavit presented to the Court dated November 19, 2007 to create a genuine issue of material fact as to Defendant's knowledge. The affidavit of Palfrey states, in pertinent part, that "I asked School Board Member Mark Pochron for a reason why the School Board did not renew my contract. Pochron told me that he did not know the reason for the decision not to renew my employment contract but that the whole board was aware of my involvement with the Ethics Commission." (Docket No. 29 at ¶ 259 (citing *Affidavit of Connie Palfrey*, Docket No. 30-2 at 47, ¶ 3)). First, the affidavit does not identify a date on which this conversation between Plaintiff and Pochron took place. Hence, its usefulness in creating a genuine issue of material fact as to causation is highly questionable at this stage because Plaintiff must demonstrate that Defendants had knowledge of her testimony *prior* to the adverse action against her. Second, Plaintiff's statement is phrased in terms of the Defendant Board Members' knowledge of her "involvement" with the Ethics Commission and not in regard to her testimony or conversations with said Commission which would constitute protected speech.[5] Third, the affidavit is not based

---

[5] The Court does not find that this statement by Plaintiff directly conflicts with either her

on Plaintiff's personal knowledge and would require an inference based on speculation to infer from the statement that all of the Board Members had knowledge of her testimony or conversations with the Ethics Commission. (*See* Fed. R. Civ. Pro. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.")).

Based on the foregoing, Plaintiff has not presented sufficient facts to demonstrate that a genuine issue of material fact exists as to the Defendants' knowledge of her engaging in the protected activity of testifying before or speaking with the Ethics Commission.

          d.     *Plaintiff's Argument that Board Members' Knowledge Can be Imputed through Knowledge of Dr. Rembold*

Plaintiff last argues that "[t]he knowledge of Defendant Rembold can be imputed to the individual Defendants on the school board under the 'cat's paw' theory.' "[6] (Docket No. 27 at 10). The argument continues that "[w]hile ordinarily the relevant decision maker's knowledge of a plaintiff's protected activity is integral to establishing a causal connection, if someone other than the formal decision maker influenced the decision to terminate, the knowledge of that person can be

_____

earlier testimony or that of Pochron, but is merely a reiteration of the same argument as to the Defendant Board Members' awareness or knowledge of Plaintiff's "involvement" with the Ethics Commission based on comments made by Defendant Rembold at the May 22, 2005 executive session of the board. Therefore, the Court need not consider whether such statement would constitute a "sham affidavit." *See Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253-54 (3d Cir. 2007)(discussing the sham affidavit doctrine which permits a district court to disregard an affidavit that contradicts the earlier deposition testimony of an affiant and is submitted to create a genuine issue of material fact for the sole purpose of defeating summary judgment).

     [6]

    The "cat's-paw" theory, as argued by Plaintiff here, if applicable, may "hold an employer liable for the discriminatory conduct of its supervisors irrespective of the knowledge of intent of the ultimate decision-makers." *Delli Santi v. CNA Insurance Co.*, 88 F.3d 192, 200 n. 11 (3d Cir. 1996)(listing cases).

imputed to the formal decision maker." *Id.* As discussed above, Plaintiff has failed to present sufficient evidence to establish that Defendant Rembold had knowledge of Plaintiff's alleged protected activity, her testimony or conversations with the Ethics Commission. Plaintiff, therefore, cannot impute such knowledge to the Defendant Board Members or Defendant School District under the "cat's paw" theory advanced here.

e. *Conclusion*

The evidence of record does not support Plaintiff's argument that the Defendants had knowledge of her testimony before the Ethics Commission. While the Defendants' denials of such knowledge are not dispositive, Plaintiff's purported evidence of direct knowledge by the Defendants relies on hearsay statements or inferences based on speculation which the Court declines to consider at this stage. In addition, Plaintiff's evidence of the Defendants' awareness of her "involvement" with the Ethics Commission does not demonstrate knowledge of her claimed protected activity circumstantially. *See Ambrose*, 303 F.3d at 495-6. Accordingly, Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to the Defendants' knowledge that Plaintiff testified before the Ethics Commission prior to their action in not renewing her contract.

2. <u>Suggestive Temporal Proximity</u>

Plaintiff next argues that she can establish causation based on the suggestive timing between her protected activity and the adverse employment action against her arguing that the "Third Circuit has made it clear that 'unusually suggestive' timing between the protected conduct and the adverse act can establish causation," and relying on *Zelinski v. Pa. State Police*, 108 Fed. Appx. 700, 706 (3d Cir. 2004) and *Farrell v. Planters Lifesavers Co.*, 206 F.2d 271, 280 (3d Cir. 2000). (Docket No. 27 at 12). Defendants argue that this matter is akin to the decision by the Court of Appeals in

*Ambrose*, which specifically rejected Plaintiff's "suggestive temporal proximity" argument as inapplicable if a plaintiff could not present evidence of a defendant's knowledge of the alleged protected activity. (Docket No. 21 at 6-7). In *Ambrose*, the Court of Appeals found the following:

> [w]e recognized in *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir.2000), that suggestive timing is relevant to causation in Title VII retaliation cases, and we recently cited *Farrell* in a prisoner's First Amendment retaliation case in support of the proposition that "suggestive temporal proximity" is relevant to establishing a causal link between protected conduct and retaliatory action. *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). Furthermore, other courts of appeals have more explicitly recognized the relevance of temporal proximity in First Amendment retaliation cases. *See Nethersole v. Bulger*, 287 F.3d 15, 18 (1st Cir. 2002); *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554-55 (2d Cir. 2001); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001), *petition for cert. filed*, 70 U.S.L.W. 3669 (U.S. Apr. 15, 2002) (No. 01-1548); *Hudson v. Norris*, 227 F.3d 1047, 1051 (8th Cir. 2000); *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002). *But see Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir.1993); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 746 (10th Cir.1999).
>
> Yet this is all largely irrelevant here. The cases listed above found temporal proximity to be relevant in establishing that protected activity was a substantial or motivating factor for retaliation. *None of these cases suggest that temporal proximity can be used to show that an employer was aware of the protected conduct in the first place.*

*Ambrose*, 303 F.3d at 494 (emphasis added).

The Court now turns to the Plaintiff's reliance on *Zelinski*. First, the Court notes that it is a non-precedential decision by the Court of Appeals and therefore not binding. Secondly, a review of *Zelinski* demonstrates that knowledge by the defendants of the plaintiff's protected activity was not at issue in that case. *Zelinski*, 108 Fed. Appx. at 706-708. Thirdly, the Court of Appeals upheld the district court's award of summary judgment in favor of the defendants on the plaintiff's First Amendment retaliation claim because it found that the plaintiff in that matter had not engaged in

protected speech. *Id*. at 108.

Based on the facts of record, Plaintiff's employment contract was scheduled to expire on August 4, 2005, *see* docket no. 23-2 at 48-49, a vote was taken to not renew her contract at the June 22, 2005 executive session of the School Board, *see* docket nos. 29 and 32 at ¶¶ 80-81, she was notified of such non-renewal in a letter dated June 27, 2005, *see* docket no. 23-2 at 36, and the position was advertised as open at the July 2005 meeting of the School Board, *see* docket nos. 22 and 28 at ¶ 47. While Plaintiff's testimony before the Ethics Commission in May of 2005 was close in time to the action on her contract, given that the term of the contract was set to expire in August in any event, the Court finds that timing of the Board's decision was not "unusually suggestive." Therefore, in accord with *Ambrose*, as Plaintiff has failed to demonstrate that Defendants had knowledge of her testimony before the Ethics Commission, she cannot demonstrate causation under the "unusually suggestive" temporal proximity theory.

### 3. Plaintiff's Additional Causation Arguments

Plaintiff also argues that aside from her unusually suggestive temporal proximity argument, that causation can be established by showing any or all of the following: (1) an "intervening antagonism between the protected activity and the adverse act"; (2) that Defendants proffered inconsistent reasons for the non-renewal of her contract; and (3) that Defendants failed to follow the progressive discipline policy of the School District prior to not renewing Plaintiff's contract. (Docket No. 27 at 13-15). Plaintiff does not suggest and the Court does not interpret such arguments as supporting a claim that Defendants had knowledge of the alleged protected activity of Plaintiff. As discussed above, without first presenting evidence of Defendants' knowledge of her testimony or conversations with the Ethics Commission, Plaintiff cannot demonstrate that she was retaliated

44

against by Defendants for engaging in such protected activity. *See Ambrose*, 303 F.3d at 493 ("[i]t is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct."). Accordingly, Plaintiff's alternative arguments as to causation fail to persuade this Court. In fact, even if Plaintiff had presented sufficient evidence of Defendants' knowledge of her claimed protected activity, the Court would find her arguments unpersuasive.

Plaintiff first argues that an "intervening antagonism" existed because of her receipt of consistently high ratings prior to the decision to not renew the contract and the difference between the June 2, 2005 letter and the decision at the executive session on June 22, 2005. (Docket No. 28 at 13). The cases upon which Plaintiff relies, *Zelinski* and *Robinson v. SEPTA*, 982 F.2d 892, 895 (3d Cir. 1993), do not support her argument that these facts demonstrate intervening antagonism. The intervening antagonism in *Robinson* centered on the defendant subjecting the plaintiff to a "constant barrage of written and verbal warnings ..., inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge." *Robinson*, 982 F.2d at 895. Likewise, the intervening antagonism in *Zelinski* constituted four incidents, including false criticism of the plaintiff in front of co-workers, another incident of unfair criticism, a disciplinary note placed in plaintiff's file and the fact that plaintiff was forced to attend unwarranted disciplinary counseling. *Zelinski*, 108 Fed.Appx. at 706-707. Here, viewing the evidence in a light most favorable to the Plaintiff, she presents evidence of a change in position by Defendants regarding her contractual status. She does not present any facts which demonstrate that she was antagonized by Defendants after she testified before the Ethics Commission.

Plaintiff next argues that Defendants submitted inconsistent reasons for the non-renewal of

Plaintiff's contract. As admitted by Plaintiff, the Defendant School Board consisted of nine members who each acted as an independent Board Member. (Docket No. 29 at ¶ 128; Docket No. 32 at ¶ 128). The Court finds that the Defendant Board Members who were against the renewal of Plaintiff's contract each articulated legitimate reasons for such action. Initially, the term of the contract was set to expire on August 4, 2005. Other issues with her performance were cited, including problems with the School District's website, computer issues, financial concerns and personalty conflicts. While the Defendant Board Members did not articulate identical reasons, as each acted as an individual and accordingly voted as an individual, the Court does not find that the articulated reasons are necessarily "inconsistent" as argued by Plaintiff.

Lastly, Plaintiff asserts that she should have been given progressive discipline as per the School District's progressive discipline policy prior to the non-renewal of her contract by Defendants. Again, Plaintiff was employed under a term employment contract which by virtue of its terms and conditions was to set expire on August 4, 2005. Plaintiff's contract does not contain any clause requiring the Defendant School District to provide her with progressive discipline prior to not renewing her contract. If the Court were to accept Plaintiff's argument, the Court would need to imply a condition precedent to the expiration of the contract requiring Defendants to renew her contract unless Plaintiff was given progressive discipline. The Court declines to import such a condition into the contractual agreement.

4.    Conclusion

Based on the foregoing, the Court finds that Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact that the Defendants in the instant matter had knowledge of her claimed protected activity, testimony before or conversations with the Pennsylvania Ethics

Commission. Thus, Plaintiff cannot prove that such testimony or conversations were a substantial or motivating factor in the Defendants' decision to not renew her employment contract as alleged in her Amended Complaint. Accordingly, as the Court finds that no genuine issue of material fact exists and that Plaintiff has failed to present sufficient evidence in support of her First Amendment retaliation claim, Defendants' motion for summary judgment as to said claim is granted and Plaintiff's First Amendment retaliation claim is dismissed, with prejudice.

### B. *Pennsylvania Whistleblower Law Claim*

Defendants have also moved for summary judgment as to Count II of Plaintiff's Complaint, Violation of the Pennsylvania Whistleblower Law. (Docket No. 21 at 7-8). In response, Plaintiff states that "Palfrey agrees to withdraw her claim under Count II of her Amended Complaint." (Docket No. 27 at 30). Accordingly, Defendants' motion for summary judgment as to such claim is granted and Plaintiff's claim at Count II of her Complaint is likewise dismissed, with prejudice.

### C. *Remaining State Law Claims*

The Court has granted summary judgment in favor of Defendants and dismissed Plaintiff's only claim over which this Court has original jurisdiction, her First Amendment retaliation claim. "Absent extraordinary circumstances, where the federal claims are dismissed on a motion for summary judgment, the district court should 'refrain from exercising pendent jurisdiction [over the state law claims].'" *Isler v. Keystone School District*, Civil Action No. 07-1335, 2008 WL 3540603 at * 12 (W.D.Pa. August 12, 2008) (quoting *Rolo v. City Investing Co. Liquidating Trust*, 845 F.Supp. 182, 215 (D.N.J. 1993) *aff'd* 43 F.3d 780, 788 (3d Cir. 1995)). No independent jurisdictional basis exists for this Court to hear Plaintiff's state statutory and common law claims, and no extraordinary circumstances exist such as to require this Court to continue to exercise

jurisdiction over those claims. The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining common law breach of contract and wrongful discharge claims as well as her action under the Pennsylvania Public Official and Employee Ethics Act, 65 Pa.C.S.A. § 1108(j) (the "Act") pursuant to 28 U.S.C. § 1367(c)(3). *See Id.* The state court is best suited to resolve Plaintiff's claim under the Act and her wrongful discharge claim which relies on the same, both of which involve novel issues of state law.

Further, pursuant to 28 U.S.C. § 1367(d), any state law period of limitations applicable to Plaintiff's state law claims "shall be tolled while the claim is pending [before the district court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d); *See also Pitchford v. Borough of Munhall, et. al,* Civil Action No. 07-440, 2007 U.S. Dist. LEXIS. 83932, at *65 (W.D.Pa. November 13, 2007)(discussing that 28 U.S.C. § 1367(d) tolls any state statute of limitations). While this Court declines to exercise supplemental jurisdiction over her state law claims, Plaintiff shall have the opportunity to pursue those claims in a Pennsylvania court of competent jurisdiction, if she so chooses.

## VI.     CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment [20] is GRANTED. Plaintiff's First Amendment retaliation and Pennsylvania Whistleblower Act claims are dismissed, with prejudice. As the Court has dismissed Plaintiff's only claim based on federal question jurisdiction, the First Amendment retaliation claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims: breach of contract, wrongful discharge and her action under the Pennsylvania Public Official and Employee Ethics Act, and said claims are dismissed, without prejudice. An appropriate Order follows.

s/Nora Barry Fischer
Nora Barry Fischer
United States District Judge


cc/ecf: All Counsel of Record.

Date:   September 25, 2008